FILED

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

97 MAY 29 AM 9: 46

U.S. DISTRICT COURT
N.D. OF ALABAMA

| | | |
|---|---|---|
| **OSCE J. ARCHIE**, | ] | |
| | ] | |
| Plaintiff(s), | ] | |
| | ] | |
| vs. | ] | CV-96-N-1980-S |
| | ] | |
| **WALMART, INC.**, | ] | |
| | ] | |
| Defendant(s). | ] | |



ENTERED
MAY 29 1997

## Memorandum of Opinion

**I.   Introduction.**

In this employment discrimination action, the plaintiff, Osce J. Archie ("Archie"), has brought claims against the defendant, Wal-Mart, Inc. ("Wal-Mart"), pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.* ("Title VII") and the Civil Rights Act of 1866, 42 U.S.C. § 1981 ("Section 1981"). Specifically, Archie asserts that Wal-Mart discriminated against him because of his race when it terminated him, purportedly for "participating in theft [from the defendant] with a white female." *Complaint* at 3.

This matter is presently before the court on the defendant's motion for summary judgment, filed on April 1, 1997. The motion, having been briefed by the defendant and the plaintiff having failed to oppose by brief or otherwise, was submitted at the court's

19

regularly scheduled motion docket on May 28, 1997. Upon due consideration, the motion will be granted and all claims dismissed.[1]

## II. Statement of Facts.[2]

The plaintiff was hired as a sales associate in the Garden Center of the Wal-Mart store in Jasper, Alabama on April 8, 1995. He was terminated on October 17, 1995, by store manager David Craig for assisting a customer in attempted theft of merchandise. Craig learned of the attempted theft from employee witnesses in the course of an investigation conducted by Jeff Desrosiers, the district loss prevention supervisor.

On October 15, 1995, Archie accompanied a female customer into the Electronics Department of the store. The customer placed a radio in her shopping cart while Archie stood by and talked to her. Archie asked his coworker Don Gilchrist, who was working in the Electronics Department, if he and the customer could pay for the radio at the front check-out counter of the store rather than in the Electronics Department as is typically required. The plaintiff and the customer then left Electronics and proceeded toward the exit doors. When they reached the doors, the greeter, Mary Jean Roden, asked the customer for her receipt. Archie intervened, stating that the customer had paid for the merchandise in the Electronics Department and that she did not receive a receipt at that

---

[1] Under the terms of Exhibit D, the court's summary judgment scheduling order, that was attached to and made a part of the court's scheduling order entered on December 18, 1996, the plaintiff's response to the summary judgment motion was due on April 22, 1997.

[2] As noted above, the plaintiff failed to respond to the defendant's motion. Exhibit D states that "[a]ll material facts set forth in the statement required of the moving party will be deemed to be admitted for summary judgment purposes unless controverted by the response of the party opposing summary judgment." *Exhibit D* at 4 (emphasis omitted) (footnote omitted). The plaintiff has not controverted any of the defendant's proposed facts. Accordingly, the defendant's statement of undisputed facts will be deemed admitted for purposes of the motion for summary judgment.

2

time. Ms. Roden called Ray Bates, the store assistant manager, for assistance. The customer told Bates that she had returned a radio with a broken antenna in Electronics and had exchanged it for the one she then possessed. She stated that her receipt was in her car, whereupon Bates informed her that she could go to the parking lot to retrieve the receipt but that she had to leave the merchandise inside the store while doing so. The customer left and did not return. When Bates asked the plaintiff if he knew the customer, Archie replied that he did not. Store management later learned, however, that the customer was Archie's neighbor. Bates and the plaintiff then returned to the Electronics Department to locate the radio that the customer had purportedly returned but could not find a similar model or one with a broken antenna.

The ensuing investigation by store management indicated that the plaintiff had entered the Electronics Department with the customer, had talked to her while she shopped within the department, had convinced an Electronics employee to allow them to purchase the radio at the front of the store rather than inside the department, had informed the greeter that the customer had already purchased the radio, and had then attempted to conceal his acquaintance with the customer. Management therefore concluded that Archie had assisted the woman's attempted theft of the radio. Craig consequently terminated the plaintiff's employment.

Wal-Mart has a policy against theft. The company's Associate Handbook for employees states that "[d]ishonesty in any form will result in immediate termination." "Dishonesty" is defined as "the misappropriation of goods or money belonging to [Wal-Mart] or others. . . ." *Defendant's Exhibit F* at 1.

3

Craig has terminated every employee he has believed to be guilty of theft or attempted theft without regard to the employee's race. In 1995, he terminated seven individuals he believed to have stolen from the company. Of those seven, two were black.[3]

The plaintiff avers his employment was terminated because of his race and bases that claim on his belief that Craig never liked him. He has such a belief because he asserts that Craig gave him "dirty looks" when Archie talked to his white female friends in the store. *Plaintiff's Deposition* at 42-43. Craig never commented about these conversations. Archie also asserts that Craig "was never openly friendly when [he] went out of [his] way to show up for work on time." *Id.* at 44. He felt "underappreciated" by Craig. *Id.* Archie also believes his employment was terminated due to his race because he is married to a white woman. Craig never discussed with the plaintiff the fact that Archie's wife is white. In fact, Craig did not know the race of Archie's wife. The plaintiff testified at deposition that there are "a bunch" of black male Wal-Mart employees involved in relationships with white females and he does not know if the employees have been terminated. *Id.* at 111-112. He further contends his termination was discriminatory because Wal-Mart typically has shoplifters arrested and banned from the store. He believes the defendant was "out to get him" and was determined to find an excuse to terminate his employment. *Id.* at 46-47.

Archie knows of no other Wal-Mart employees who were guilty of theft or if so, whether they were terminated. He claims that two employees were terminated for stealing

---

[3] One of the black employees was the plaintiff.

merchandise after he left the employ of Wal-Mart, one black and the other of unknown race. He learned of these events while playing basketball with someone named "Bone." Bone's wife allegedly told her husband about the terminations, and Bone relayed the information to Archie. The plaintiff knows no details of the events.

Three weeks after Archie was terminated from Wal-Mart, he began working for the Alabama Thrift Store. His employment was terminated in July 1996 due to horseplay and has not worked since that time. He has not applied for employment at any retail establishment similar to Wal-Mart and does not wish to be reinstated at the defendant's store.

Wal-Mart has a policy against both race discrimination and theft. The company also has an open-door policy that encourages associates to present any grievances they may have to management, proceeding to higher levels of management if their complaints are not handled satisfactorily. The open-door policy is established in the Associate Handbook, and the plaintiff knew of the policy.

Archie never complained about his termination to anyone higher than Desrosiers or Craig in Wal-Mart's management hierarchy. Neither Craig nor any other manager ever gave the plaintiff any disciplinary write-ups or criticized his work performance prior to his termination.

The plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") on October 19, 1995, asserting that Wal-Mart does not treat white employees the same as it treated him and that he was discharged because of his race. The

EEOC issued him a notice of right to sue on April 29, 1996, and he filed the instant action on July 29, 1996.

### III.   Summary Judgment Standard.

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The party asking for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)). The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Celotex*, 477 U.S. at 322-23. There is no requirement, however, "that the moving party support its motion with affidavits or other similar materials *negating* the opponent's claim." *Id.* at 323.

Once the moving party has met his burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324 (quoting Fed. R. Civ. P. 56(e)). The

6

nonmoving party need not present evidence in a form necessary for admission at trial; however, he may not merely rest on his pleadings. *Id.* at 324. "[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 322.

After the plaintiff has properly responded to a proper motion for summary judgment, the court must grant the motion if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The substantive law will identify which facts are material and which are irrelevant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248. "[T]he judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id.* at 249. His guide is the same standard necessary to direct a verdict: "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251-52; *see also Bill Johnson's Restaurants, Inc. v. NLRB*, 461 U.S. 731, 745 n.11(1983) (indicating the standard for summary judgment is "[s]ubstantively . . . very close" to that for motions for directed verdict). However, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). If the evidence is "merely colorable, or is not significantly probative,

7

summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (citations omitted); *accord Spence v. Zimmerman*, 873 F.2d 256 (11th Cir. 1989). Furthermore, the court must "view the evidence presented through the prism of the substantive evidentiary burden," so there must be sufficient evidence on which the jury could reasonably find for the plaintiff. *Anderson*, 477 U.S. at 254; *Cottle v. Storer Communication, Inc.*, 849 F.2d 570, 575 (11th Cir. 1988). Nevertheless, credibility determinations, the weighing of evidence, and the drawing of inferences from the facts are functions of the jury, and, therefore, "[t]he evidence of the nonmovant is to be believed and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255. The nonmovant need not be given the benefit of every inference but only of every reasonable inference. *Brown v. City of Clewiston*, 848 F.2d 1534, 1540 n.12 (11th Cir. 1988).

### IV. Discussion.

Archie claims that the defendant discriminated against him on the basis of race when it terminated his employment, allegedly for assisting a customer in attempted theft of store merchandise. A plaintiff who alleges disparate treatment based upon race under Title VII must prove that the defendant acted with discriminatory purpose. *Nix v. WLCY Radio/Rahall Communications*, 738 F.2d 1181, 1184 (11th Cir. 1984). Likewise, section 1981 requires proof of discriminatory intent. *Firefighters Local Union No. 1784 v. Stotts*, 467 U.S. 561, 583 n. 16 (1984).

The plaintiff can create a rebuttable presumption of discriminatory intent by establishing a prima facie case. *Young v. General Foods Corp.*, 840 F.2d 825, 828 (11th Cir. 1988), *cert. denied*, 488 U.S. 1004 (1989). This may be done in three ways: (1) "by

presenting direct evidence of discriminatory intent; [(2)] by meeting the test set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 . . . (1973); or [(3)] by demonstrating through statistics a pattern of discrimination." *Early v. Champion Int'l Corp.*, 907 F.2d 1077, 1081 (11th Cir. 1990).

### A. **Direct Evidence and Statistical Evidence.**

"Direct evidence of discrimination would be evidence which, if believed, would prove the existence of a fact without inference or presumption." *Carter v. City of Miami*, 870 F.2d 578, 581-82 (11th Cir. 1989) (citations omitted). "[O]nly the most blatant remarks, whose intent could be nothing more than to discriminate . . . constitute direct evidence of discrimination." *Id.* at 582 (footnote omitted). A second means by which Archie may establish a prima facie case is by presenting statistical evidence that demonstrates a pattern and practice of race discrimination on the part of Wal-Mart. *See Early v. Champion Int'l Corp.*, 907 F.2d 1077, 1081 (11th Cir. 1990) (age discrimination case). The plaintiff has presented no direct evidence or statistical data; therefore, he must attempt to establish a prima facie case of discrimination through circumstantial evidence.

### B. *McDonnell Douglas* Test.

Where a plaintiff's discrimination claim is based on circumstantial evidence, the court employs the burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). First, the plaintiff has the burden of establishing a prima facie case of discrimination.[4] "Establishment of the prima facie case in effect creates a

---

[4] Under this test, the elements of a prima facie case may be modified to fit the circumstances. "The *McDonnell Douglas-Burdine* proof structure 'was never intended to be rigid, mechanized, or ritualistic. Rather, it is merely a sensible, orderly way to evaluate the evidence in light of common experience as it bears on the

9

presumption that the employer unlawfully discriminated against the employee." *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 254 (1981). The burden of production then shifts to the defendant, requiring an articulation of some "legitimate, nondiscriminatory reason" for the alleged discriminatory employment action. *Id.* "'[I]t is possible for the defendant to present such strong evidence of a nondiscriminatory rationale that summary judgment is warranted.'" *Brown v. American Honda Motor Co., Inc.*, 939 F.2d 946, 950 (11th Cir. 1991), *cert. denied*, 502 U.S. 1058 (1992) (quoting *Grigsby v. Reynolds Metals Co.*, 821 F.2d 590, 596 (11th Cir. 1987)).

Once the defendant presents a legitimate, nondiscriminatory reason for its action, the presumption of discrimination "drops from the case." *Burdine*, 450 U.S. at 255 & n.10. The plaintiff must then demonstrate by a preponderance of the evidence that the reason offered by the defendant was not the true reason for the employment decision, but rather is a mere pretext for discrimination. *McDonnell Douglas*, 411 U.S. at 804. "'[B]ecause the plaintiff bears the burden of establishing pretext [for discrimination], he must present 'significantly probative' evidence on the issue to avoid summary judgment.'" *Isenbergh v. Knight-Ridder Newspaper Sales, Inc.*, 97 F.3d 436, 444 (11th Cir. 1996) (quoting *Young v. General Foods Corp.*, 840 F.2d 825, 829 (11th Cir. 1988), *cert denied*, 488 U.S. 1004 (1989)) (other citations omitted) (alterations in original). The plaintiff may establish that the defendant intentionally discriminated against him "'either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing

---

critical question of discrimination.'" *Grigsby v. Reynolds Metals Co.*, 821 F.2d 590, 594 (11th Cir. 1987) (quoting *United States Postal Serv. Bd. of Governors v. Aikens*, 460 U.S. 711, 715 (1983)).

that the employer's proffered explanation is unworthy of credence.'" *Carter v. City of Miami*, 870 F.2d 578, 584 (11th Cir. 1989) (quoting *Goldstein v. Manhattan Indus., Inc.*, 758 F.2d 1435, 1445 (11th Cir.), *cert. denied*, 474 U.S. 1005 (1985)). "'Conclusory allegations of discrimination, without more, are not sufficient to raise an inference of pretext or intentional discrimination where [a defendant] has offered extensive evidence of legitimate, non-discriminatory reasons for its actions.'" *Isenbergh*, 97 F.3d at 444 (quoting *Young*, 840 F.2d at 830). If a plaintiff succeeds in this burden, the "disbelief of the defendant's proffered reasons, together with the prima facie case, is sufficient circumstantial evidence to support a finding of discrimination" and to preclude summary judgment. *Combs v. Plantation Patterns*, 106 F.3d 1519, 1529 (11th Cir.).

To make out a prima facie case of racially discriminatory termination, Archie must demonstrate that (1) he is a member of a protected class; (2) he was qualified for the position he held at Wal-Mart; (3) his employment was terminated despite his qualifications; and either (4) Wal-Mart replaced him with a person outside the protected class, *Walker v. NationsBank of Fla., N.A.*, 53 F.3d 1548, 1556 (11th Cir. 1995), or (4) after his termination, his position remained open and Wal-Mart continued to seek applicants of similar qualifications. *Mayfield v. Patterson Pump Co.*, 101 F.3d 1371, 1375 (11th Cir. 1996). Archie has not met this burden.

While the plaintiff has demonstrated both that he is black and thus a member of a protected class and that he was terminated, he cannot establish the other two elements of his prima facie case of racially discriminatory termination. The undisputed facts show that Archie was qualified for his sales associate position at Wal-Mart until the day he allegedly

assisted a neighbor while she attempted to steal a radio from the defendant's store. At that time, according to established Wal-Mart company policy, he lost all qualification. Pursuant to the Associate Handbook, "[d]ishonesty in any form will result in immediate termination." *Defendant's Exhibit F* at 1. Wal-Mart's investigation of the incident in question revealed that the plaintiff convinced a sales associate in the Electronics Department to allow his neighbor to pay for her electronic item at one of the cash registers in the front of the store rather than within the Electronics Department as was normally required. Then, when his neighbor attempted to exit the store without paying for the radio and was waylaid by the store's greeter, Archie informed the greeter that his neighbor had already purchased the radio. He then concealed the fact that he knew the customer attempting to steal the merchandise. Under any definition, the plaintiff's conduct would be characterized as dishonest. According to Wal-Mart policy, therefore, the defendant had legitimate grounds upon which to base the termination of his employment. Furthermore, the plaintiff has made no allegation regarding his replacement in the Garden Center or the qualifications of the applicants Wal-Mart considered in its endeavor to fill the vacant position.

Assuming, *arguendo*, however, that Archie has made out a prima facie case of racially discriminatory discharge, the burden would then shift to Wal-Mart to demonstrate it had a legitimate, nondiscriminatory reason for terminating the plaintiff. This the defendant has clearly done, for it has established that it discharged Archie pursuant to the express policy against dishonesty as established by the Associate Handbook and that it reasonably believed the plaintiff to have committed such dishonesty.

12

The burden would then return to the plaintiff to demonstrate by a preponderance of the evidence that Wal-Mart's proffered reason was merely pretext for its true discriminatory purpose. Archie's conclusory allegations of racial discrimination are insufficient to meet this burden, see *Isenburgh v. Knight-Ridder Newspaper Sales, Inc.*, 97 F.3d 436, 444 (11th Cir. 1996), yet he has offered nothing else. He states that his supervisor, David Craig, never liked him and supports such a proposition with his opinion that Craig gave him "dirty looks." *Plaintiff's Deposition* at 42-43. He further asserts that Craig underappreciated him and "was never openly friendly when [he] went out of [his] way to show up for work on time." *Id.* at 44.[5] Archie contends that Craig was motivated to discriminate against him because Archie's wife is white. Craig, however, never knew the race of Archie's wife, so such information could not have been a factor in Craig's decision to discharge the plaintiff. Archie's conclusory belief that the defendant was "out to get him," *id.* at 46-47, is insufficient to meet his burden. Moreover, the plaintiff's dispute with the testimony of the eyewitnesses upon which Wal-Mart based its decision to terminate Archie is immaterial as long as the defendant had a good faith belief that Archie acted dishonestly. *See Elrod v. Sears, Roebuck & Co.*, 939 F.2d 1466, 1471 (11th Cir. 1991) (even where an employer's allegations against an employee are untrue, plaintiff must demonstrate the asserted belief was "unworthy of credence"). There is no evidence to the contrary. Furthermore, the plaintiff has offered no comparative evidence of pretext. The undisputed facts establish that David Craig treated all employees whom he believed to be guilty of theft the same as

---

[5] The court fails to see why Craig would need to be openly appreciative of the plaintiff's efforts to arrive at work promptly when the plaintiff was doing merely that which an employer expects of any employee.

13

he treated Archie. He terminated them all. The plaintiff has not met his burden; therefore, his claim of racially discriminatory discharge will be dismissed.

**V. Conclusion.**

The defendant's motion for summary judgment will be granted and the plaintiff's claim dismissed. The court will enter an appropriate order in conformity with this memorandum of opinion.

Done, this 29th of May, 1997.

EDWIN L. NELSON
UNITED STATES DISTRICT JUDGE